| | | |
|---|---|---|
| JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor; JOHN and JANE DOE B, individually and as parent and next friends of DOE CHILD B, a minor; | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) | No. 17 CV |
| LAKE ZURICH COMMUNITY UNIT SCHOOL DISTRICT 95; CHAD BEAVER, individually and as an agent of District 95; DAVID PROFITT, individually and as an agent of District 95; WILLIAM STUTZMAN, individually and as an agent of District 95; KAINE OSBURN, individually and as an agent of District 95; Rolando Vasquez; individually and as an agent of District 95, DOE COACHES 1-10, individually and as agents of District 95; | ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| Defendants. | | |

## COMPLAINT AT LAW

NOW COME the Plaintiffs, JOHN and JANE DOE A, individually and as Parents and Next Friends of DOE CHILD A, and JOHN and JANE DOE B, individually and as Parents and Next friends of DOE CHILD B, a minor (collectively "Plaintiffs"), by and through their attorneys, and complaining against Defendants, LAKE ZURICH COMMUNITY UNIT SCHOOL DISTRICT 95 (hereinafter "School District 95"); CHAD BEAVER, individually and as an agent of SCHOOL DISTRICT 95; DAVID PROFITT, individually and as an agent of SCHOOL DISTRICT 95; WILLIAM STUTZMAN, individually and as an agent of SCHOOL DISTRICT 95, ROLANDO VASQUEZ, individually and as an agent of SCHOOL DISTRICT 95, KAINE OSBURN, individually and as an agent of SCHOOL DISTRICT 95, and DOE

COACHES 1-10, individually and as agents of SCHOOL DISTRICT 95, (collectively "Defendants"), pleading hypothetically and in the alternative, state as follows:

## JURY DEMAND

1. The Plaintiff hereby demands a trial by jury.

## NATURE OF ACTION

2. This cause of action arises out of the hazing, harassment, bullying, abuse, and other unlawful treatment of Doe Child A and B, caused by Defendant LAKE ZURICH COMMMUNITY UNIT SCHOOL DISTRICT 95, Defendant Coaches BEAVER, PROFITT, STUTZMAN, and DOE COACHES 1-10, from September 2016 to November 2016, at or near the boys' locker room located at Lake Zurich High School, City of Lake Zurich, County of Lake, Illinois.

3. This cause of action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law and through state law claims of willful and wanton conduct of DOE CHILD A's and DOE CHILD B's rights as secured by the United States Constitution.

4. This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and Illinois state law claims of willful and wanton conduct, against Defendant Coaches BEAVER, PROFITT, STUTZMAN, and DOE COACHES 1-10, in their individual capacity, and LAKE ZURICH COMMMUNITY UNIT SCHOOL DISTRICT 95.

5. The subject hazing rituals and traditions are a form of bullying and have been part of the culture of the Lake Zurich Football Team for years. The teams' coaches have sanctioned these rituals, while other school officials – including Lake Zurich's principal – turned a

blind eye toward the abuse, even after the abuse was reported to them. Indeed, the Plaintiffs are but a fraction of the students who have been physically and sexually assaulted pursuant to this hazing ritual. In addition to seeking damages to compensate Plaintiffs for their psychological injuries, DOE CHILDREN A and B, who still attend Lake Zurich, seek injunctive relief that would put an end to the hazing rituals, so that neither they nor future members of the Lake Zurich Football team will be subjected to the same abuses Plaintiffs have suffered.

6. This is a tort action brought by two students at Lake Zurich High School located in Lake Zurich, Illinois. Both students were forced to endure hazing, harassment, bullying, abuse amounting to assaults by members of Lake Zurich High School Football Team. These assaults were part of longstanding and prevalent hazing rituals and traditions known to Defendant Coaches long before the dates of Plaintiffs' assaults.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and redressing violations of civil rights pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over Illinois state law claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Illinois. Moreover, upon information and belief, all of the parties reside in this Judicial District.

## THE PARTIES

### Plaintiffs

9. Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, are residents of the City of Lake Zurich, Lake County, Illinois.

10. Plaintiff DOE CHILD A is a minor and is a resident of the City of Lake Zurich, Lake County, Illinois. JOHN DOE A attended Lake Zurich High School at all relevant times.

11. Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, are residents of the City of Lake Zurich, Lake County, Illinois.

**12.** Plaintiff DOE CHILD B is a minor and is a resident of the City of Lake Zurich, Lake County, Illinois. JOHN DOE B attended Lake Zurich High School at all relevant times.

**Defendants**

13. Defendant LAKE ZURICH COMMMUNITY UNIT SCHOOL DISTRICT 95 (hereinafter "DISTRICT 95"), is a municipal corporation existing by and under the laws of the State of Illinois, with its principal place of business located in Lake Zurich, Lake County, Illinois.

14. Defendant CHAD BEAVER (hereinafter "BEAVER"), was an agent of DISTRICT 95 and was a football coach at Lake Zurich High School at all relevant times. BEAVER has been employed by DISTRICT 95 in that position at all relevant times. He is also a dean of students at Lake Zurich High School. As a football coach and a dean of students, Defendant BEAVER has a duty to supervise and protect the physical safety of students at Lake Zurich High School at all times. This includes a duty to report any allegations of sexual abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq.* As a football coach and a dean of students, Defendant BEAVER also has the ability and authority to take corrective action on behalf of DISTRICT 95 to stop harassment, hazing, and bullying, and to discipline perpetrators of such conduct.

15. Defendant PROFITT (hereinafter "PROFITT"), was an agent of DISTRICT 95 and was the head varsity football coach at Lake Zurich High School at all relevant times. Defendant PROFITT has been employed by DISTRICT 95 in that position at all relevant times. He is also a gym teacher at Lake Zurich High School. As football coach and gym teacher, Defendant PROFITT has a duty to supervise and protect the physical safety of students at Lake Zurich High School at all times. This includes a duty to report any allegations of sexual abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq.* As a football coach and gym teacher, Defendant PROFITT also has the ability and authority to take corrective action on behalf of DISTRICT 95 to stop harassment, hazing, and bullying, and to discipline perpetrators of such conduct.

16. Defendant WILLIAM STUTZMAN (hereinafter "STUTZMAN"), was an agent of DISTRICT 95 and was a varsity and freshman football coach at Lake Zurich High School at all relevant times. As an official volunteer football coach, Defendant STUTZMAN has been an agent of DISTRICT 95 in that position at all relevant times. As a football coach, Defendant STUTZMAN also has the ability and authority to stop harassment, hazing, and bullying.

17. Defendant, KAINE OSBURN (hereinafter "OSBURN"), was an agent of DISTRICT 95 and was the superintendent for DISTRICT 95, which includes Lake Zurich High School, at all relevant times. As superintendent of DISTRICT 95, Defendant OSBURN has a duty to supervise and protect the physical safety of students at Lake Zurich High School at all times. This includes a duty to report any allegations of sexual abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child

Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq*. As superintendent, Defendant OSBURN also has the ability and authority to take corrective action on behalf of DISTRICT 95 to stop harassment, hazing, and bullying, and to discipline perpetrators of such conduct.

18. Defendant, ROLANDO VASQUEZ (hereinafter "VASQUEZ"), was an agent of DISTRICT 95 and was the athletic director for Lake Zurich High School, at all relevant times. As Athletic Director, Defendant VASQUEZ has a duty to supervise and protect the physical safety of students at Lake Zurich High School at all times. This includes a duty to report any allegations of sexual abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq*. As athletic director, Defendant VASQUEZ also has the ability and authority to take corrective action on behalf of DISTRICT 95 to stop harassment, hazing, and bullying, and to discipline perpetrators of such conduct.

19. Defendants, DOE COACHES 1-10, were agents of Defendant DISTRICT 95 and staff and/or faculty of Lake Zurich High School at all relevant times. DOE COACHES 1-10 have been employed by Defendant DISTRICT 95 in these positions at all relevant times. As staff and/or faculty of Lake Zurich High School, DOE COACHES 1-10 have the duty to supervise and protect the physical safety of students at Lake Zurich High School at all times. This includes a duty to report any allegations of sexual abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 *et seq*. As staff and/or faculty of Lake Zurich High School, DOE COACHES 1-10 also have the ability and authority to take corrective action on behalf of Defendant DISTRICT 95 to stop harassment, hazing, and bullying, and discipline perpetrators of such conduct or refer them to discipline.

## FACTUAL ALLEGATIONS

### Lake Zurich High School Football Traditions

20. Upon information and belief, Lake Zurich High School has had longstanding issues involving hazing and bullying within sports' teams that takes on a sexual tone.

21. Upon information and belief, Lake Zurich High School sports teams have been known to practicing hazing and/or bullying traditions as far back as 1998, including the following:

    a. Upon information and belief, members of the boys' cross country team repeatedly duck-taped teammates naked to the post, a hazing tradition of the team;

    b. Upon information and belief, members of the wrestling team were tied naked to wrestling dummies in a tradition of hazing; and,

    c. Upon information and belief, members of the wrestling team participated in a tradition called "Birthday Beatdowns" in which coaches and students would beat, kick, chase, punch, and harass the birthday person.

22. Upon information and belief, Lake Zurich High School sports coaches have knowledge of said hazing and/or bullying traditions and have taken part as far back as 1998, including the following:

    a. Upon information and belief, cross country coaches watched as members of the team duck-taped a teammate naked to a post; and,

    b. Upon information and belief, members of the wrestling coaching staff often participated in a tradition called "Birthday Beatdown".

23. Upon information and belief the administration had notice of such practices as far back as 1998, in the following ways:

a. Upon information and belief, the tradition called "Birthday Beatdown" often took place outside the locker room and through the hallways of the school; and,

b. Upon information and belief, the administration was informed by a cross country coach that members of the team duck-taped a teammate naked to a post.

24. Upon information and belief, the Lake Zurich High School Football team has had longstanding traditions of hazing and bullying, going back as far as 1997, including the following:

a. Football team members being stripped and locked into lockers naked;

b. Football team members placing their genitals on another member's face without consent;

c. Multiple football team members urinating on another member without consent in the shower area;

d. Football team members shoving broomsticks into the anus' of another member without consent;

e. Football team members punching another member's genitals;

f. Football team members beating another member and then placing their genitals on their face or urinating on them once the member was on the ground; and,

g. Football team members being targeted for not showering on the premises.

25. Upon information and belief, said acts were done with the knowledge of the football coaching staff stemming as far back as the incidents in 1997.

26. Upon information and belief, Lake Zurich High School football traditions of hazing and bullying continue to include the following acts within the locker room:

a. Forcing teammates to strip naked;

    b.  Urinating on teammates;

    c.  Slapping teammates in the face with genitals; and,

    d.  Forcing teammates to perform oral sex on each other.

27. Upon information and belief, an enduring tradition of the Lake Zurich High School Football Team is the team's Thursday night "pasta dinners" provided by the parents after football practice.

28. Upon information and belief, after the Thursday night "pasta dinners" conclude, members of the Lake Zurich High School Football Team proceed to the locker room.

29. Upon information and belief, once at the locker room the team takes part in its tradition of "Roasts", considered a ritual by team members.

30. Upon information and belief, "Roasts" were led in the past by the older brother of the student who runs roast for the 2016-2017 season, both are sons of a current coach.

31. Upon information and belief, "Roasts" are events in which a member of the team is selected to be targeted for name-calling; wearing embarrassing costumes; engaging in and forcing teammates into sexual acts, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and other acts that are sexual in nature.

32. Upon information and belief, said "Roasts" are also called "Asshole of the Week" and considered a team bonding exercise.

33. Upon information and belief, a whiteboard was displayed within the Lake Zurich Boys' locker room that was called the "Asshole Board" and players would tease and make statements about a different player each day. At the end of the week the "Asshole of the Week" would be announced and said player would be required to perform certain acts.

34. Upon information and belief, the "Asshole Board" is displayed prominently enough for anyone entering the locker room to observe it and what is written on it, including students who are not on the football team.

35. Upon information and belief, the social pressure and bullying at such events is so severe that even unwilling participants are forced to take part in acts that are assaultive, illegal, and often sexual in nature.

36. Upon information and belief, the Lake Zurich High School Football coaches' offices are a floor above the boys' locker room, wherein most of the football team's hazing traditions take place.

37. Upon information and belief, the boys' locker room is considered a "safe space" for the football team by the coaching staff because the coaches are not always present to give the team its "privacy".

38. Upon information and belief, knowledge and involvement in said traditions is widespread throughout the football program.

## Lake Zurich Community Unit School District 95 Policies

39. Upon information and belief, DEFENDANT DISTRICT 95's Board of Education Policies require any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made. Bd. Of Ed. Policy Manual, Section 5:90 Personnel, Abused and Neglected Child Reporting.

40. Upon information and belief, DEFENDANT DISTRICT 95's Board of Education Policies require employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building

Principal, Superintendent, or another designee. Bd. Of Ed. Policy Manual, Section 5:90 Personnel, Abused and Neglected Child Reporting.

41. Upon information and belief, DEFENDANT DISTRICT 95 Board of Education policies state that students who violate the rights of others or district policies will be subject to disciplinary measures. Bd. Of Ed. Policy Manual, Section 7:130 Students, Student Rights and Responsibilities.

42. Upon information and belief, the DEFENDANT DISTRICT 95's policies specifically prohibit bullying during any school–sponsored activity and while on school property. Bd. of Ed. Policy Manual, Section 7:180 Students, Prevention of and Response to Bullying, Intimidation, and Harassment.

43. Upon information and belief, DEFENDANT DISTRICT 95's Superintendent, by its own policies, must promptly investigate and address reports of bullying after reports of bullying are received. Bd. of Ed. Policy Manual, Section 7:180 Students, Prevention of and Response to Bullying, Intimidation, and Harassment.

44. Upon information and belief, students are specifically prohibited from engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying. Bd. of Ed. Policy Manual, Section 7:190 Students, Student Behavior.

45. Upon information and belief, students are further prohibited from engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault. Bd. of Ed. Policy Manual, Section 7:190 Students, Student Behavior.

46. Upon information and belief, students are also prohibited from taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity. Bd. of Ed. Policy Manual, Section 7:240 Students, Conduct Code for Participants in Extracurricular Activities.

47. 720 ILCS 120/5 of the Illinois Hazing Act, defines a person committing hazing as someone "who knowingly requires the performance of any act by a student or other person in a school... for the purpose of induction or admission into any group, organization, or society associated or connected with the institution if: (a) the act is not sanctioned or authorized by that educational institution; and (b) the act results in bodily harm to any person." Individuals who take part in such acts can be charged with a Class A misdemeanor or a Class 4 felony depending on the severity of the injury. 720 ILCS 120/10.

**Doe Child A**

48. DOE CHILD A began attending Lake Zurich High School on the first day of the ▮▮▮▮ academic year.

49. DOE CHILD A had an ▮▮▮▮▮▮▮▮▮▮ in place for the ▮▮▮▮  academic year.

50. On or about September ▮▮, DOE CHILD A joined the Lake Zurich High School football team and was excited to be part of the team.

51. Since early on in the season, DOE CHILD A had elected to forgo taking showers at the Lake Zurich High School locker room after practice, instead going home to shower.

52. On or around ▮▮▮▮▮ , 2016, two to three members of the football team threatened DOE CHILD A, stating they would "hurt him" if he did not take a shower.

53. DOE CHILD A was significantly smaller than the individual teammates who threatened him and felt coerced and intimidated to refuse.

54. DOE CHILD A told his teammates he had taken already taken a shower and attempted to leave.

55. DOE CHILD A's teammates forced him to march to the shower area of the locker room.

56. Once he had arrived, DOE CHILD A's teammates forced him to ███████ completely in front of them.

57. DOE CHILD A was then ordered to turn around and not face his teammates.

58. After a few seconds, DOE CHILD A heard one of his teammates yell "Don't turn around".

59. Fearing for the worst, DOE CHILD A turned around to see two of his teammates ███████████ onto his unprotected body.

60. DOE CHILD A's assailants berated him with derogatory statements, such as "you have [breasts] bigger than my mom."

61. When DOE CHILD A turned around he saw most of the rest of his football team watching, laughing, and joking as this act occurred.

62. Not a single teammate of DOE CHILD A's intervened on his behalf.

63. Upon information and belief, after practice had ended, one of DOE CHILD A's teammates told a parent that the aforementioned acts had been forced on DOE CHILD A.

64. DOE CHILD A's assigned student dean was not DEFENDANT CHAD BEAVER.

65. Upon information and belief, DEFENDANT CHAD BEAVER was assigned to handle DOE CHILD A's incident.

66. On or around October 4, 2016, JANE and JOHN DOE A were had a telephone conference call with DEFENDANT CHAD BEAVER, in his capacity as Dean of Students and Varsity Football Coach.

67. At said meeting, DEFENDANT BEAVER stated, when referring to the type of assault experienced by DOE CHILD A, that "this has been happening".

68. DEFENDANT BEAVER further stated that 14 kids had witnessed what had happened to DOE CHILD A.

69. DEFENDANT BEAVER reassured them that what happened to DOE CHILD A was "not a big deal," "happens all the time" and "even I got peed on in high school."

70. DEFENDANT BEAVER informed JANE and JOHN DOE A there would "always be a coach in the locker room", that they would "sit in an office and watch for commotion".

71. After the teleconference with DEFENDANT BEAVER, DOE CHILD A was repeatedly harassed and bullied, including being referred to as "snitch" and having his books and belongings knocked to the floor by his teammates.

72. Upon information and belief, an adult was not supervising the locker rooms until December 9, 2016.

73. Upon information and belief, Defendant STUTZMAN berated and scolded the student who informed his mother of DOE CHILD A's assault for telling on his teammates.

74. Upon information and belief, another member of the ██████ football team was also ████████ on in September of 2016.

75. It is a custom, tradition, ritual and/or long-standing practice for members of the Lake Zurich Football Team to target, engage in hazing of a sexual nature, and ██████ on

vulnerable members of the team, and this was well-known by Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ and DOE COACHES.

76. Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES knew, or should have known, that the Lake Zurich High School Football Team had a long-standing custom, tradition, or practice of assaulting vulnerable team members in a sexual manner.

77. Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES sanctioned and did nothing to end the custom, tradition, or practice of assaulting vulnerable team members in a sexual manner.

78. Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES perpetuated the custom, tradition, or practice of engaging in hazing of a sexual nature, ██████ on, and assaulting vulnerable team members in a sexual manner by allowing these assaults to continue despite having knowledge of them.

79. Years before DOE CHILD A was hazed at Lake Zurich High School, Defendants knew, or should have known, that Lake Zurich High School's football team had a custom, tradition, or practice of engaging in hazing of a sexual nature.

80. In the years before DOE CHILD A was hazed at Lake Zurich High School, Defendants took no action to end, and tacitly sanctioned the aforementioned custom, tradition, or practice of engaging in hazing of a sexual nature.

**Doe Child B**

81. DOE CHILD B began attending Lake Zurich High School on the first day of the ████-
████ academic year.

82. DOE CHILD B joined the Lake Zurich Football Team as a ███████ athlete and has played on various levels since that time.

83. Prior to the 2016 football season, DOE CHILD B was subjected to another student performing sexual acts to his person.

84. DOE CHILD B has been on the receiving end of bullying and hazing including being called names on the basis of his ████, including "█████", and being held against his will.

85. On October 27, 2016, the Lake Zurich Football Team had practice and afterward a "pasta dinner" in the school cafeteria.

86. After the dinner had concluded, the members of the Lake Zurich Football Team went down to the locker rooms unaccompanied by coaches, parents, or any adults to perform the "Roast".

87. Upon information and belief, a staff member present at the time knew that the players were going to take part in the "Asshole of the Week" tradition.

88. The students were allowed to go to the locker room and remain there without supervision.

89. Once in the locker room, members of the team claimed to put the names of each player into a hat.

90. DOE CHILD B and two other members of the ██████ football team's names were drawn out of a hat.

91. Upon information and belief, DOE CHILD B and the two other players were targeted for their names to be chosen because they are close friends and good players.

92. The name of a ████████ member of the team was also pulled out of the hat.

93. Upon information and belief, members of the football team declared that the three older players had to "████████████████" or perform a "██████" on the ████████ member of the team.

94. Upon information and belief, said dare had been used at least once before by an upperclassman member of the football team to make an underclassman ███████████ ███████ before the 2016-2017 school year.

95. Upon information and belief, approximately 45 students were present at this time.

96. Upon information and belief, the members of the football team in the locker room were chanting "state, state, state" and playing loud music.

97. Upon information and belief, as the students were gathering a private security officer hired by Lake Zurich High School entered the locker room and observed the students gathered, loudly chanting, and students on their ██████ with their ████████████ of another football team member and left without investigating further, without immediately informing anyone of what he observed, or remaining in the locker room until all the students had left.

98. Upon information and belief, the private security officer returned back upstairs.

99. Upon information and belief, on October 27, 2016, after the incident of hazing, the same private security officer observed an assistant coach make contact with a student's butt with an open hand.

100. On November 4, 2016, JANE DOE A went to Lake Zurich High School to sign the anti-hazing pledge, as required for all parents, and spoke to Defendant VASQUEZ. Defendant VASQUEZ stated "I can't do anything about what I don't know" referring to the hazing incidents that had occurred in the past.

101.     It is a custom, tradition, ritual and/or long-standing practice for members of the Lake Zurich Football Team to target, engage in hazing of a sexual nature, and force sexual assault on members of the team, and this was well-known by Defendants BEAVER, PROFITT, STUTZSMAN, VASQUEZ, OSBURN and DOE COACHES.

102.     Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 knew, or should have known, that the Lake Zurich High School Football Team had a long-standing custom, tradition, or practice of assaulting team members in a sexual manner and forcing them to go through and perform sexual acts without their consent.

103.     Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 sanctioned and did nothing to end the custom, tradition, or practice of assaulting team members in a sexual manner and forcing them to go through and perform sexual acts without their consent.

104.     Defendants BEAVER, PROFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 perpetuated the custom, tradition, or practice of assaulting team members in a sexual manner and forcing them to go through and perform sexual acts without their consent by allowing these assaults to continue despite having knowledge of them.

105.     Years before DOE CHILD B was hazed at Lake Zurich High School, Defendants knew, or should have known, that Lake Zurich High School's football team had a custom, tradition, or practice of assaulting team members in a sexual manner and forcing them to go through and perform sexual acts without their consent.

106.     In the years before DOE CHILD B was hazed at Lake Zurich High School, Defendants took no action to end, and tacitly sanctioned the aforementioned custom, tradition, or practice of assaulting team members in a sexual manner and forcing them to go through and perform sexual acts without their consent.

107.     From on or about September 26, 2016, before DOE CHILD B was hazed at Lake Zurich High School, Defendants knew, or should have known, that Lake Zurich High School's football team had a custom, tradition, or practice of assaulting team members in a sexual manner.

108.     From on or about September 26, 2016, before DOE CHILD B was hazed at Lake Zurich High School, Defendants took no action to end, and tacitly sanctioned the aforementioned custom, tradition, or practice of assaulting team members in a sexual manner.

## Aftermath of Incidents

109.     Upon information and belief, the Lake Zurich High School administration and football coaching staff took no further action regarding addressing hazing on the football team until after the incident occurring on October 27, 2016.

110.     Upon information and belief, the private security officer who witnessed the Thursday night "Roast" informed Defendant BEAVER on October 28, 2016.

111.     On October 28, 2016 the Lake Zurich Varsity Football Team played its first playoff game with a full roster.

112.     Upon information and belief, Lake Zurich High School administration did not contact the Lake Zurich Police Department regarding the incidents of abuse until October 31, 2016, after its October 28, 2016 football game.

113.    Upon information and belief, DCFS was not contacted until October 31, 2016, after the October 28, 2016 playoff game.

114.    Upon information and belief, the Lake Zurich High School principal was not informed of the incident until November 1, 2016.

115.    Upon information and belief, on November 2, 2016, students became aware that employees of Lake Zurich High School were aware something had occurred in the locker room on October 27, 2016.

116.    On November 3, 2016, parents of the students in the Lake Zurich Football program were asked to attend a meeting addressing the incident on October 27, 2016.

117.    Upon information and belief, the incident involving DOE CHILD A was not mentioned at the parents' meeting.

118.    Upon information and belief, Defendants BEAVER and PROFFITT have been placed on paid administrative leave since November 4, 2016, but no further discipline has been meted out to any other Defendants.

119.    Upon information and belief, Defendants BEAVER, PROFFITT, and VASQUEZ announced their voluntary resignation in January 2017.

120.    On November 5, 2016, the Lake Zurich Varsity Football Team played yet another playoff game with its full roster and with none of its members being disciplined, reprimanded, or suspended at any time.

121.    Upon information and belief, only one of the students responsible for the assault on DOE CHILD A was punished with ▮ days of in school suspension, but was still allowed to remain within the locker room and attend practices during his suspension.

122.    Upon information and belief, none of the students responsible for the forced participation in sexual acts of DOE CHILD B were punished.

123.    Upon information and belief, members of the football team responsible for intimidating, coercing, bullying and forcing the performance of sexual acts of hazing on October 27, 2016 have received little to no punishment, other than being required to sign an anti-hazing "Student Behavior Memorandum of Agreement" and agreeing to teach anti-hazing seminars to younger students.

124.    Upon information and belief, a student found posting satirical and offensive written content about the hazing traditions received four days of suspension and was the student punished to the utmost for the above-described incidents, despite his lack of involvement with the actual acts of hazing and bullying.

125.    Upon information and belief, the entire Lake Zurich Football Team enjoyed their end of the season awards banquet on January 11, 2017.

126.    Since the outset of the investigation by the Lake Zurich High School administration and when rumors of the incidents involving the Lake Zurich Football Team came to light, the students who were forced to take part have been subjected to retaliation and have been actively sought out by their teammates.

127.    Upon information and belief, only after this incident occurred did Defendant DISTRICT 95 require a supervision schedule be put in place, to assign a coach to supervise the locker room while it is in use.

128.    In the years before DOE CHILD A or B was subjected to hazing that is sexual in nature, the Lake Zurich High School administration and coaching staff took no action to

end, and tacitly sanctioned, the custom, tradition, or practice of assaulting team members in a sexual manner.

## COUNT 1—WILFUL AND WANTON CONDUCT
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. School District 95, Beaver, Proffitt, Osburn, Vasquez, Stutzman and Doe Coaches 1-10, as agents)**

129.    Plaintiffs incorporate by reference all preceding paragraphs.

130.    During the 2016-2017 academic year, School District 95; by and through its actual agents, apparent agents, employees and/or servants: Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10; had a duty to supervise and protect the physical safety of Lake Zurich High School students and to refrain from acting with an utter indifference and/or conscious disregard for the safety of School District 95 students attending Lake Zurich High School, including DOE CHILD A.

131.    School District 95; by and through its actual agents, apparent agents, employees and/or servants: Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10; breached their duty to DOE CHILD A in one or more of the following ways:

    a.  Defendants knew or should have known that by not supervising their charges such acts of bullying, harassment, and sexual assault could occur and go unnoticed;

    b.  Defendants knew or should have known about the traditions of Lake Zurich High School, which included hazing and bullying of a sexual nature, including ████████ on teammates;

c.  Defendants knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

d.  Defendants knew or should have known that their failure to properly supervise team meetings and the locker rooms of Lake Zurich High School posed a high probability of serious harm to students, including DOE CHILD A;

e.  Defendants recklessly did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD A, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1;

f.  Defendants recklessly or consciously disregarded the substantial risks posed by not supervising team meetings and the locker rooms of Lake Zurich High School;

g.  Defendants recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A constituting criminal acts; and,

h.  Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

132.  As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD A sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor pray for judgment against Defendant School District 95 and Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, as agents of School District 95, for money damages in excess of FIFTY

THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT 2—WILFUL AND WANTON CONDUCT
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. Beaver, Proffitt, Stutzman, Vasquez, Osburn and Doe Coaches 1-10, individually)**

133. Plaintiffs incorporate by reference all preceding paragraphs.

134. During the 2016-2017 academic year, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, had a duty to supervise and protect the physical safety of Lake Zurich High School students and to refrain from acting with an utter indifference and/or conscious disregard for the safety of School District 95 students attending Lake Zurich High School, including DOE CHILD A.

135. Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, breached their duty to DOE CHILD A in one or more of the following ways:

   a. Defendants knew or should have known that by not supervising their charges such acts of bullying, harassment, and sexual assault could occur and go unnoticed;

   b. Defendants knew or should have known about the traditions of Lake Zurich High School, which included hazing and bullying of a sexual nature, including ▆▆▆▆ on teammates;

   c. Defendants knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

d. Defendants knew or should have known that their failure to properly supervise team meetings and the locker rooms of Lake Zurich High School posed a high probability of serious harm to students, including DOE CHILD A;

e. Defendants recklessly did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD A, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1;

f. Defendants recklessly or consciously disregarded the substantial risks posed by not supervising team meetings and the locker rooms of Lake Zurich High School;

g. Defendants recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A constituting criminal acts; and,

h. Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

136.   As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD A sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor, pray for judgment against Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT 3—WILFUL AND WANTON CONDUCT
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. School District 95, Beaver, Proffitt, Vasquez, Stutzman, Osburn, and Doe Coaches 1-10, as agents)**

137.   Plaintiffs incorporate by reference all preceding paragraphs.

138.     During the 2016-2017 academic year, School District 95; by and through its actual agents, apparent agents, employees and/or servants: Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10; had a duty to supervise and protect the physical safety of Lake Zurich High School students and to refrain from acting with an utter indifference and/or conscious disregard for the safety of School District 95 students attending Lake Zurich High School, including DOE CHILD B.

139.     School District 95; by and through its actual agents, apparent agents, employees and/or servants: Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10; breached their duty to DOE CHILD B in one or more of the following ways:

   a.   Defendants knew or should have known that by not supervising their charges such acts of bullying, harassment, and sexual assault could occur and go unnoticed;

   b.   Defendants knew or should have known about the traditions of Lake Zurich High School, which included hazing and bullying of a sexual nature, including forcing teammates to perform sexual acts on one another;

   c.   Defendants knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

   d.   Defendants knew or should have known that their failure to properly supervise team meetings, "Roasts," "pasta dinners," and the locker rooms of Lake Zurich

High School posed a high probability of serious harm to students, including DOE CHILD B;

    e. Defendants recklessly did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD B, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1;

    f. Defendants recklessly or consciously disregarded the substantial risks posed by not supervising team meetings, "Roasts," "pasta dinners," and the locker rooms of Lake Zurich High School;

    g. Defendants recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD B constituting criminal acts; and,

    h. Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

140.     As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD B sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, a minor, pray for judgment against Defendant School District 95 and Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, as agents of School District 95, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT 4—WILFUL AND WANTON CONDUCT

**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. Beaver, Proffitt, Osburn, Vasquez, Stutzman and Doe Coaches 1-10, individually)**

141.    Plaintiffs incorporate by reference all preceding paragraphs.

142.    During the 2016-2017 academic year, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, had a duty to supervise and protect the physical safety of Lake Zurich High School students and to refrain from acting with an utter indifference and/or conscious disregard for the safety of School District 95 students attending Lake Zurich High School, including DOE CHILD B.

143.    Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, breached their duty to DOE CHILD B in one or more of the following ways:

   a.  Defendants knew or should have known that by not supervising their charges such acts of bullying, harassment, and sexual assault could occur and go unnoticed;

   b.  Defendants knew or should have known about the traditions of Lake Zurich High School, which included hazing and bullying of a sexual nature, including forcing teammates to perform sexual acts on one another;

   c.  Defendants knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

   d.  Defendants knew or should have known that their failure to properly supervise team meetings, "Roasts," "pasta dinners," and the locker rooms of Lake Zurich

High School posed a high probability of serious harm to students, including DOE CHILD B;

    e. Defendants recklessly did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD B, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1;

    f. Defendants recklessly or consciously disregarded the substantial risks posed by not supervising team meetings, "Roasts," "pasta dinners," and the locker rooms of Lake Zurich High School;

    g. Defendants recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD B constituting criminal acts; and,

    h. Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

144. As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD B sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, a minor, pray for judgment against Defendant BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT 5—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. Beaver, Proffitt, Vasquez, Stutzman and Doe Coaches 1-10, individually)**

145. Plaintiffs incorporate by reference all preceding paragraphs.

146.     While serving as DOE CHILD A's football coaches and gym teachers during the during the 2016-2017 academic year, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 had a duty to refrain from acting with extreme and outrageous conduct toward the students they supervised, including DOE CHILD A.

147.     While serving as DOE CHILD A's football coaches and gym teachers, and despite the aforementioned duties, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 engaged in extreme and outrageous conduct by ignoring verbal, physical, and sexual abuse endured by DOE CHILD A, despite possessing information and/or witnessing events to the contrary; tolerating harassment, hazing, and bullying in direct violation of district policy; detrimentally effecting DOE CHILD A's mental health and substantially interfering with DOE CHILD A's academic performance and ability to benefit from school services; not observing, supervising or investigating allegations of harassment, hazing, and bullying; allowing students who engaged in the harassment, hazing, and bullying back in the locker room with DOE CHILD A; not taking requisite action to discipline students involved in the harassment, hazing, and bullying of DOE CHILD A; never disciplining DOE COACHES 1-10 for their failure to supervise locker rooms where the harassment, hazing, and bullying; taking no action to educate students, teachers, and staff about assaults and/or harassment, hazing, and bullying; and providing no solution whatsoever to address DOE CHILD A's safety concerns.

148.    Defendant BEAVER was made aware of the substantial hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A, including the fact that he was ████████ on in front of the football team.

149.    Defendant BEAVER maintained that ████████ on students "[had] been happening" and that it "happens all the time."

150.    Defendant BEAVER maintained that there would "always be a coach in the locker," and that they would "sit in an office and watch for commotion." However, coaches that were assigned to the locker room; including, but not limited to Defendant STUTZMAN, PROFFITT and DOE COACHES 1-10; contributed to a fostering of the hazing, harassment, bullying, abuse, and other unlawful treatment by berating and scolding students who had told their parents about incidents of hazing, harassment, bullying, abuse, and other unlawful treatment.

151.    Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 intended their conduct to inflict severe emotional distress on DOE CHILD A or recklessly or consciously disregarded the probability of causing emotional distress to DOE CHILD A.

152.    Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 acted with willful, malicious and with knowledge of or with conscious disregard of the harm that would be inflicted upon Plaintiff by allowing DOE CHILD A and other Lake Zurich High School students to be unsupervised during their time in the locker room.

153.    As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A has been damaged in that he suffered and continues to suffer severe mental and

emotional distress, humiliation, shame, embarrassment, fear, and anxiety that has resulted in permanent damage to her social and emotional well-being and has impaired his ability to function at a level at which she could reasonably have been expected to function.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendant School District 95 and Defendant BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT 6—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. Beaver, Proffitt, Vasquez, Stutzman and Doe Coaches 1-10, individually)**

154.     Plaintiffs incorporate by reference all preceding paragraphs.

155.     While serving as DOE CHILD B's football coaches and gym teachers during the 2015-2016 and 2016-2017 academic years, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, and DOE COACHES 1-10 had a duty to refrain from acting with extreme and outrageous conduct toward the students they supervised, including DOE CHILD B.

156.     While serving as DOE CHILD B's football coaches and gym teachers, and despite the aforementioned duties, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 engaged in extreme and outrageous conduct by ignoring verbal, physical, and sexual abuse endured by DOE CHILD B, despite possessing information and/or witnessing events to the contrary; tolerating harassment, hazing, and bullying in direct violation of district policy; detrimentally

effecting DOE CHILD B's mental health and substantially interfering with DOE CHILD B's academic performance and ability to benefit from school services; not observing, supervising or investigating allegations of harassment, hazing, and bullying; allowing students who engaged in the harassment, hazing, and bullying back in the locker room with DOE CHILD B; not taking requisite action to discipline students involved in the harassment, hazing, and bullying of DOE CHILD B; never disciplining DOE COACHES 1-10 for their failure to supervise locker rooms where the harassment, hazing, and bullying; taking no action to educate students, teachers, and staff about assaults and/or harassment, hazing, and bullying; and providing no solution whatsoever to address DOE CHILD B's safety concerns.

157.     Defendants BEAVER, PROFFIT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were aware of the "Roasts" that took place in the Lake Zurich High School locker rooms following the "pasta dinners." Further they were aware of the hazing, harassment, bullying, abuse, and other unlawful treatment that took place at these "Roast" sessions.

158.     This practice was a custom, tradition, ritual, and/or long-standing practice for members of the Lake Zurich football team to target, engage in hazing of a sexual nature, and force sexual assault on members of the team, and this was well-known by Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

159.     Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 intended their conduct to inflict severe emotional distress on DOE

CHILD B or recklessly or consciously disregarded the probability of causing emotional distress to DOE CHILD B.

160.    Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 acted with willful, malicious and with knowledge of or with conscious disregard of the harm that would be inflicted upon Plaintiff by allowing DOE CHILD B and other Lake Zurich High School students to be unsupervised during their time in the locker room.

161.    Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 sanctioned and perpetuated this behavior by being aware of said behavior, but not intervening and allowing it to persist.

162.    As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B has been damaged in that he suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety that has resulted in permanent damage to his social and emotional well-being and has impaired his ability to function at a level at which she could reasonably have been expected to function.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, pray for judgment against Defendant School District 95 and Defendant BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT 7—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: SUBSTANTIVE DUE PROCESS
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. Beaver, Proffitt, Stutzman, Vasquez, and Doe Coaches 1-10, individually)**

163.     Plaintiffs incorporate by reference all preceding paragraphs.

164.     That DOE CHILD A has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

165.     That at all relevant times Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN, and DOE COACHES 1-10 were acting under color of state law.

166.     The actions and omissions of Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, and DOE COACHES 1-10, as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

167.     As a result of Defendants' actions, DOE CHILD A suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

168.     School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

169.     School District 95 purports to follow a policy, outlined in the Handbook, that requires:

    a. Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

b. Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

c. Students who violate the rights of others or district policies will be subject to disciplinary measures;

d. Bullying during any school–sponsored activity and while on school property be prohibited;

e. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and,

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

170.     School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, no report of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A was ever submitted to DCFS;

b. Upon information and belief, the school principal and superintendent were never informed of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A;

c. Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

d. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

e. Upon information and belief, investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant School District 95;

f. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without reprimand;

g. Upon information and belief, none of the students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were removed from the football team;

h. Upon information and belief, bullying reports were not addressed in any way, including that supervision was not provided in locker room as promised and coaching staff threatened teammates who had reported the bullying; and,

i. Otherwise violated school policy.

171.    School District 95 policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Lake Zurich High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

172.    Illinois law was not followed by Defendants in that they did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD A, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1.

173.    Defendants disregarded the substantial risks that actions were perpetrated against DOE CHILD A that would constitute criminal acts under the Illinois Hazing Act, 720 ILCS 120/10.

174.    Illinois law was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

175.    Defendants' deliberate indifference to DOE CHILD A's safety, School District 95 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, supervision, policy and legal requirements.

176.     Defendant BEAVER's dismissal of DOE CHILD A's complaints as just being a routine occurrence, happening "all the time," manifested to coaches and students that they could act with impunity.

177.     Defendants had a duty to observe, supervise, and protect DOE CHILD A during football games, football practices, and inside athletic locker rooms and they failed to do so.

178.     As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

179.     As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JONE AND JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT 8—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: SUBSTANTIVE DUE PROCESS
(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. Chad Beaver, David Proffitt, Vasquez, Stutzman and Doe Coaches 1-10, individually)

180.    Plaintiffs incorporate by reference all preceding paragraphs.

181.    That DOE CHILD B has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

182.    That at all relevant times, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN, and DOE COACHES 1-10 were acting under color of state law.

183.    The actions and omissions of Defendants BEAVER, PROFFITT, STUTZMAN, OSBURN and DOE COACHES 1-10, as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

184.    As a result of Defendants' actions, DOE CHILD B suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

185.    School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

186.    School District 95 purports to follow a policy, outlined in the Handbook, that requires:

   a. Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

b. Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

c. Students who violate the rights of others or district policies will be subject to disciplinary measures;

d. Bullying during any school–sponsored activity and while on school property be prohibited;

e. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault;

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity.

187.  School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, a report was not immediately submitted to DCFS, nor were the principal and superintendent notified, rather, this happened after several days;

b.  Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

c.  Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to disciplinary measures;

d.  Upon information and belief, investigations into the allegations by DOE CHILD B were not promptly initiated by the agents and/or employees of Defendant School District 95;

e.  Upon information and belief, reports of bullying were not addressed adequately;

f.  Upon information the prohibitions of bullying, hazing, intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and sexual activity were not enforced; and,

g.  Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to continue participating in sporting events without reprimand.

188.    School District 95 policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Lake Zurich High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

189. Illinois law was not followed by Defendants in that they did not inform the authorities or administration of the occurrence of hazing and/or abuse to DOE CHILD B, in violation of 720 ILCS 12C-50.1 and 325 Ill. Comp. Stat. 5/1.

190. Defendants deliberately disregarded the substantial risks that actions were perpetrated against DOE CHILD A that would constitute criminal acts under the Illinois Hazing Act, 720 ILCS 120/10.

191. Illinois law was not followed in the case of DOE CHILD B's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

192. Defendants' deliberate indifference to DOE CHILD B's safety, School District 95 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, supervision during outdoor break or recess, policy and legal requirements.

193. Defendants had a duty to observe, supervise, and protect DOE CHILD B during football games, football practices, and inside athletic locker rooms and they failed to do so.

194. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

195.    As a direct and proximate result of the acts and omissions set forth above, DOE

CHILD B suffered and continues to suffer severe mental and emotional distress,

humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent

damage to his social and emotional well-being, and is thus entitled to an award of

monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JONE AND JANE DOE B, individually and as parents and next

friends of DOE CHILD B, pray for judgment against Defendants BEAVER, PROFFITT,

STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, individually, for money

damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages

awarded, and costs incurred in bringing this action.

### COUNT 9—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: EQUAL PROTECTION
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. Beaver, Proffitt, Vasquez, Stutzman, Osburn and Doe Coaches 1-10, individually)**

196.    Plaintiffs incorporate by reference all preceding paragraphs.

197.    That at all relevant times, Defendants BEAVER, PROFFITT, STUTZMAN,

VASQUEZ, OSBURN and DOE COACHES 1-10 were acting under color of state law.

198.    That the above actions by Defendants BEAVER, PROFFITT, STUTZMAN,

VASQUEZ, OSBURN and DOE COACHES 1-10 have resulted in the denial of equal

protection rights, as a "class of one," all in violation of the Fourteenth Amendment to the

United States Constitution, as DOE CHILD A was retaliated against, harassed, bullied,

and intimidated, all against his will, and differently than those similarly situated students.

199.    That the actions of Defendants were the result of personal animus against DOE

CHILD A, and said actions and denials were taken without any rational basis.

200. That by reason of the aforesaid actions, Defendants' actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD A and other similarly situated students, all in violation of his constitutional rights.

201. That by reason of the aforesaid actions, DOE CHILD A suffered actions that were not inflicted upon regular education students that did not have specialized education needs.

202. DOE CHILD A was intentionally treated differently from the rest of his peers and there was no rational basis for the different treatment, including being subjected to hazing, harassment, bullying, and sexual assaults by other students.

203. Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 did not take adequate action to prevent or deter the conduct complained of.

204. School District 95 purports to follow a policy, outlined in the Handbook, of zero tolerance for harassment or bullying of any kind during any school sponsored program or activity on school property, specifically prohibiting bullying on the basis of actual or perceived physical or mental disability.

205. School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

206. School District 95 purports to follow a policy, outlined in the Handbook, that requires:

a. Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

b. Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

c. Students who violate the rights of others or district policies will be subject to disciplinary measures;

d. Bullying during any school–sponsored activity and while on school property be prohibited;

e. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault;

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity.

207. School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, no report of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A was ever submitted to DCFS;

b. Upon information and belief, the school principal and superintendent were never informed of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A;

c. Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

d. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

e. Upon information and belief, investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant School District 95;

f. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without reprimand;

g. Upon information and belief, none of the students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were removed from the football team;

h. Upon information and belief, bullying reports were not addressed in any way, including that supervision was not provided in locker room as promised and coaching staff threatened teammates who had reported the bullying; and,

i. Otherwise violated school policy.

208. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

209. Defendants' deliberate indifference to DOE CHILD A's safety and School District 95 policy demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, and supervision during outdoor break or recess.

210. Defendant BEAVER's dismissal of DOE CHILD A's complaints as just being a routine occurrence, happening "all the time," manifested to coaches and students that they could act with impunity.

211. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and the subsequent deprivation of his rights.

212.    Defendants' deliberate indifference to DOE CHILD A's safety and School District 95 policy demonstrate an obvious need for training regarding bullying, harassment, discipline, reporting obligations, and supervision.

213.    Defendants had a duty to observe, supervise, and protect DOE CHILD A during football games, football practices, and in athletic locker rooms and they failed to do so.

214.    As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

215.    As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 , for money damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT 10—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: EQUAL PROTECTION
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. Beaver, Proffitt, Stutzman, Vasquez, Osburn and Doe Coaches 1-10, individually)**

216.    Plaintiffs incorporate by reference all preceding paragraphs.

217.     That at all relevant times, Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were acting under color of state law.

218.     That the above actions by Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 have resulted in the denial of equal protection rights, as a "class of one," all in violation of the Fourteenth Amendment to the United States Constitution, as DOE CHILD B was retaliated against, harassed, intimidated, and bullied, all against his will, and differently than those similarly situated students.

219.     That the actions of Defendants were the result of personal animus against DOE CHILD B, and said actions and denials were taken without any rational basis.

220.     That by reason of the aforesaid actions, Defendants' actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD B and other similarly situated students, all in violation of his constitutional rights.

221.     That by reason of the aforesaid actions, DOE CHILD B suffered actions that were not inflicted upon other students of different ethnic backgrounds.

222.     DOE CHILD B was harassed, intimidated and bullied on the basis of his ███ as indicated by the repeated racial name-calling that he suffered, including ███████".

223.     DOE CHILD B was intentionally treated differently from the rest of his peers and there was no rational basis for the different treatment, including being subjected to hazing, harassment, bullying, and sexual assaults by other students.

224.     Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 did not take adequate action to prevent or deter the conduct complained of.

225. School District 95 purports to follow a policy, outlined in the Handbook, of zero tolerance for harassment or bullying of any kind during any school sponsored program or activity on school property, specifically prohibiting bullying on the basis of actual or perceived race and/or ethnicity.

226. School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

227. School District 95 purports to follow a policy, outlined in the Handbook, that requires:

    a. Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

    b. Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

    c. Students who violate the rights of others or district policies will be subject to disciplinary measures;

    d. Bullying during any school–sponsored activity and while on school property be prohibited;

    e. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault;

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity.

228. School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, a report was not immediately submitted to DCFS, nor were the principal and superintendent notified, rather, this happened after several days;

b. Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

c. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to disciplinary measures;

d. Upon information and belief, investigations into the allegations by DOE CHILD B were not promptly initiated by the agents and/or employees of Defendant School District 95;

e. Upon information and belief, reports of bullying were not addressed adequately;

f. Upon information the prohibitions of bullying, hazing, intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and sexual activity were not enforced; and,

g. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to continue participating in sporting events without reprimand.

229. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILDBA's attendance and was not followed in the case of DOE CHILD B's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

230. Defendants' deliberate indifference to DOE CHILD B's safety and School District 95 policy demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, and supervision.

231. Defendant BEAVER's dismissal of DOE CHILD B's complaints as just being a routine occurrence, happening "all the time," manifested to coaches and students that they could act with impunity.

232. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILD B's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN

and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and the subsequent deprivation of his rights.

233. Defendants' deliberate indifference to DOE CHILD B's safety and School District 95 policy demonstrate an obvious need for training regarding bullying, harassment, discipline, reporting obligations, and supervision during outdoor break or recess.

234. Defendants had a duty to observe, supervise, and protect DOE CHILD B during football games, football practices, and in athletic locker rooms and they failed to do so.

235. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

236. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, pray for judgment against Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, for money damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT 11—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983 (MONELL CLAIM)**
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. School District 95, Beaver, Proffitt, Vasquez, Stutzman, Osburn and Doe Coaches 1-10, as agents)**

237.    Plaintiff incorporates by reference all preceding paragraphs.

238.    The actions of Defendants resulted from, and were taken, pursuant to a *de facto* policy and widespread custom of not supervising, monitoring or protecting students during football practices, football games, and their time in the athletic locker rooms at Lake Zurich High School and subsequently not reporting, sufficiently investigating or disciplining harassment, hazing, and bullying that occurs.

239.    This *de facto policy* and widespread custom of Defendant SCHOOL DISTRICT 95 is implemented by Defendant BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN, including Defendants DOE COACHES 1-10, all acting under the color of law, who chose to violate Plaintiff's constitutional rights, without rightful authority of law.

240.    The existence of the *de facto* policy and widespread custom described above has been known or should have been known to supervisory and policy making officers and officials of Defendant SCHOOL DISTRICT 95 for a substantial period of time.

241.    Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the Defendant SCHOOL DISTRICT 95 has not taken steps to determine said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in said practices, have not effectively trained the football coaches, gym teachers, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and the practices described herein.

242.     That DOE CHILD A has a clearly established right to equal access to all benefits and privileges of a public education and a right to be from offensive harassment in school.

243.     School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

244.     School District 95 purports to follow a policy, outlined in the Handbook, that requires:

   a.  Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

   b.  Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

   c.  Students who violate the rights of others or district policies will be subject to disciplinary measures;

   d.  Bullying during any school–sponsored activity and while on school property be prohibited;

   e.  Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault;

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity.

245. School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, no report of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A was ever submitted to DCFS;

b. Upon information and belief, the school principal and superintendent were never informed of the hazing, harassment, bullying, abuse, and other unlawful treatment experienced by DOE CHILD A;

c. Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

d. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

e. Upon information and belief, investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant School District 95;

f. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without reprimand;

g. Upon information and belief, none of the students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were removed from the football team;

h. Upon information and belief, bullying reports were not addressed in any way, including that supervision was not provided in locker room as promised and coaching staff threatened teammates who had reported the bullying; and,

i. Otherwise violated school policy.

246. Defendants disregarded the substantial risks that actions were perpetrated against DOE CHILD B that would constitute criminal acts under the Illinois Hazing Act, 720 ILCS 120/10, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, VASQUEZ, PROFFITT, STUTZMAN, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

247. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, PROFFITT,

STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

248.     Defendants' deliberate indifference to DOE CHILD A's safety and well-being and School District 95 policy demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, and supervision during athletic games, practices, and time in the athletic locker rooms.

249.     That the above actions and omissions by Defendants were deliberate and intentional and have resulted in violations of DOE CHILD A's rights to due process and equal protection, all in violation of the Fourteenth Amendment to the United States Constitution.

250.     That by reason of the aforesaid actions, Defendant SCHOOL DISTRICT 95's actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD A and other similarly situated students, all in violation of his constitutional rights, and as a direct and proximate result thereof, he sustained damages in an amount in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendant School District 95 and Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, as agents of School District 95, for money damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT 12—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983 (MONELL CLAIM)**

**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. School District 95, Beaver, Proffitt, Vasquez, Stutzman, Osburn and Doe Coaches 1-10, as agents)**

251. Plaintiffs incorporate by reference all preceding paragraphs.

252. The actions of Defendants resulted from, and were taken, pursuant to a *de facto* policy and widespread custom of not supervising, monitoring or protecting students during football practices, football games, and their time in the athletic locker rooms at Lake Zurich High School and subsequently not reporting, sufficiently investigating or disciplining harassment, hazing, and bullying that occurs.

253. This *de facto policy* and widespread custom of Defendant SCHOOL DISTRICT 95 is implemented by Defendant BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN including Defendants DOE COACHES 1-10, all acting under the color of law, who chose to violate Plaintiff's constitutional rights, without rightful authority of law.

254. The existence of the *de facto* policy and widespread custom described above has been known or should have been known to supervisory and policy making officers and officials of Defendant SCHOOL DISTRICT 95 for a substantial period of time.

255. Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the Defendant SCHOOL DISTRICT 95 has not taken steps to determine said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in said practices, have not effectively trained the football coaches, gym teachers, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and the practices described herein.

256. That DOE CHILD B has a clearly established right to equal access to all benefits and privileges of a public education and a right to be from offensive harassment in school.

257. School District 95's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for District 95 employees, including Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10.

258. School District 95 purports to follow a policy, outlined in the Handbook, that requires:

  a. Any district employee that suspects or receives knowledge that a student may be abused shall immediately report the abuse to DCFS and notify the Superintendent or Principal that a report has been made;

  b. Employees or volunteer coaches "who personally observe[] any act of 'hazing' which results in bodily harm" to immediately report such to the Building Principal, Superintendent, or another designee;

  c. Students who violate the rights of others or district policies will be subject to disciplinary measures;

  d. Bullying during any school–sponsored activity and while on school property be prohibited;

  e. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

f. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

g. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault;

h. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and doing so can result in removal from the activity.

259. School District 95 policy was not followed by Defendant SCHOOL DISTRICT 95 employees in that:

a. Upon information and belief, a report was not immediately submitted to DCFS, nor were the principal and superintendent notified, rather, this happened after several days;

b. Upon information and belief, personal observations of hazing, harassment, bullying, abuse, and other unlawful treatment were not immediately reported to the principal, superintendent, or other designee;

c. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to disciplinary measures;

d. Upon information and belief, investigations into the allegations by DOE CHILD B were not promptly initiated by the agents and/or employees of Defendant School District 95;

e. Upon information and belief, reports of bullying were not addressed adequately;

f. Upon information the prohibitions of bullying, hazing, intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and sexual activity were not enforced; and,

g. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to continue participating in sporting events without reprimand.

260. Defendants disregarded the substantial risks that actions were perpetrated against DOE CHILD B that would constitute criminal acts under the Illinois Hazing Act, 720 ILCS 120/10, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, VASQUEZ, PROFFITT, STUTZMAN, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

261. School District 95 policy was not being followed at Lake Zurich High School during DOE CHILD B's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants SCHOOL DISTRICT 95, BEAVER, VASQUEZ, PROFFITT, STUTZMAN, OSBURN and DOE COACHES 1-10 were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

262. Defendants' deliberate indifference to DOE CHILD B's safety and well-being and School District 95 policy demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, and supervision during athletic games, practices, and time in the athletic locker rooms.

263. That the above actions and omissions by Defendants were deliberate and intentional and have resulted in violations of DOE CHILD B's rights to due process and

equal protection, all in violation of the Fourteenth Amendment to the United States Constitution.

264.    That by reason of the aforesaid actions, Defendant SCHOOL DISTRICT 95's actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD B and other similarly situated students, all in violation of his constitutional rights, and as a direct and proximate result thereof, he sustained damages in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, pray for judgment against Defendant School District 95 and Defendants BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, as agents of School District 95, for money damages in excess of FIFTY THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

## PRAYER FOR INJUNCTIVE DECLARATORY RELIEF

WHEREFORE, Plaintiffs, JOHN & JANE DOE, individually and as Parents and Next Friends of DOE CHILD A and DOE CHILD B, minors, request judgment in their favor and pray for relief against Defendants, DISTRICT 95; BEAVER, as an agent of DISTRICT 95; STUTZMAN, individually and as an agent of DISTRICT 95; PROFFITT, as an agent of DISTRICT 95; VASQUEZ, individually and as agent of DISTRICT 95 and OSBURN, individually and as agent of DISTRICT 95, as follows:

265.    For an order declaring that Defendants District 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, have acted with willful and wanton disregard to known acts of hazing including assault, battery, and sexual assault;

266.    For an order declaring that Defendants District 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10 have acted with willful and wanton disregard by failing to properly train District 95 teachers, coaches, and staff how to properly supervise and discipline students who engage in hazing, including assault, battery, and sexual assault;

267.    For a permanent injunction restraining and enjoining Defendants District 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, from failing to adequately protect Plaintiffs and other similarly situated students, from verbal and physical harassment within the School District, including but not limited to assault, battery, and sexual assault;

268.    For a permanent injunction ordering Defendants District 95, BEAVER, PROFFITT, STUTZMAN, VASQUEZ, OSBURN and DOE COACHES 1-10, to stop engaging in unlawful acts, and to develop policies and procedures for ending any such unlawful acts and the hostile and unsafe environment, including but not limited to the following:

   a. Require Defendant District 95 to implement mandatory and effective training programs for District faculty, staff, coaches, and students on issues relating to hazing and bullying, and methods to intervene to stop students from hazing/bullying other students.

b. Require Defendant District 95 to adopt policies with specific guidelines for instructing teachers, coaches, staff, and other School District employees about how to address observed and unobserved acts of hazing, bullying, and violence;

c. Require Defendant District 95 to conduct assemblies for all students in the School District addressing issues of hazing, bullying, and violence, wherein students are instructed about laws prohibiting violence, including but not limited to assault, battery, sexual assault, hazing, and bullying, as well as the detrimental social and psychological effects such behavior has on students' lives;

d. Require Defendant District 95 to conduct educational sessions wherein student athletes and their parents are instructed about laws prohibiting hazing and bullying and how they impact the athletes' required conduct during school sponsored activities;

e. Require Defendant District 95 to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the schools and to address instances of hazing and bullying that arise at the schools;

f. Require Defendant District 95 to maintain statistical data concerning each complaint of hazing and bullying made by a student, parent, or staff member, as well as the specific action School District personnel took to resolve the complaint; and,

g. For an order awarding such other and further relief this Court deems just and proper.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By:/s Bhavani Raveendran
                Attorney for Plaintiffs

Antonio M. Romanucci
Bhavani Raveendran
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street
Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
ARDC No.:6309968